**No. 27839**

## The People of the State of Colorado v. Melvin Brown

(574 P.2d 92)

Decided February 6, 1978.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, for plaintiff-appellant.

Miles M. Gersh, Earl F. Jones, for defendant-appellee.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The appellee is charged with first-degree arson,[1] unlawful use of an incendiary device,[2] and first-degree assault.[3] This interlocutory appeal challenges the trial court's order suppressing all testimony regarding an item of physical evidence allegedly destroyed through improper investigatory techniques. We reverse and remand for further proceedings.

On November 5, 1976, Investigator Donald Seary of the Denver Fire Department was called to investigate a fire. He testified that at the scene of the fire he found what he believed to be the remains of a "molotov cocktail" located on a wet section of carpeting that had the odor of gasoline. The debris consisted of liquid, the broken pieces of a glass bottle, and the charred remains of what appeared to the investigator to be "some type of wick."

In an attempt to preserve the evidence, primarily for testing of flammable content, the investigator cut out the wet section of carpeting, folded it over with the debris on it, and placed the bundle in a one-gallon metal can. He then sealed the can. The investigator admitted that it was difficult, and required tight packing, to fit the carpet and debris into the small can.

The seal on the can was punctured for the purpose of testing flammable content and then resealed. Except for that, the seal was not broken until the can's lid was removed on July 11, 1977, at the request of defense counsel. At that time, it was discovered that the carpeting and glass fragments had been effectively preserved, but that the charred remains of the purported cloth wick had disintegrated. Investigator Seary testified at the suppression hearing that in all probability the wick remnants had been destroyed when he had folded the carpet over it and forced it into the can. There was conflicting testimony whether the wick remains could have

---

[1]Section 18-4-102, C.R.S. 1973.
[2]Section 18-12-109, C.R.S. 1973 (1976 Supp.).
[3]Section 18-3-202, C.R.S. 1973 (1976 Supp.).

been preserved if Seary had exercised greater care or used a different container. Seary, however, stated that he followed standard fire department procedures and that no larger containers were available to him. He also emphasized that his primary purpose in preserving the carpeting and debris was to test for flammable content, and that other types of containers suggested by defense counsel and the trial court would not have been as well-suited for that purpose.

The trial court found that the destroyed evidence was material to two of the counts against the appellee,[4] and that the alleged wick had been destroyed because the investigator had made no effort to preserve it in spite of the fact that he knew it to be material evidence. Accordingly, the trial court ruled that the appellee could not receive a fair trial unless all testimony regarding the piece of charred wick remnant were suppressed. We do not agree.

We have recently had occasion to discuss the development of the law regarding suppression or destruction of evidence by the prosecution, and need not repeat that discussion here. *People v. Roblas*, 193 Colo. 496, 568 P.2d 57 (1977).[5] It is sufficient for this case to reiterate that, although the prosecution does have a duty to prevent the loss or destruction of evidence that may be favorable to the defendant, that duty is not absolute. The purpose of the exclusionary rule in this type of case is to ensure that facts are presented fairly to the jury and that the parties receive a fair trial. If applying the exclusionary rule would only further corrupt the truthseeking process, then that purpose is defeated. *People v. Roblas, supra.*

In this case, suppression of all testimony regarding the wick would in effect result in a dismissal of the charges of unlawful use of an incendiary device, since the existence of a wick must be proven. Section 18-12-109(1), C.R.S. 1973, fn. 4, *supra.* As in *Roblas*, all witnesses who would testify as to the nature of the lost evidence are available for cross-examination at trial. At the suppression hearing, Investigator Seary had considerable difficulty articulating the basis for his opinion that the charred material was

---

[4]This is undoubtedly true, especially as to the charge of unlawful use of an incendiary device. Section 18-12-109(1)(c), C.R.S. 1973 (1976 Supp.), provides that the definition of "incendiary device" includes "a breakable container including a flammable liquid or compound *and a wick* composed of any material which, when ignited, is capable of igniting such flammable liquid or compound. . . ." [Emphasis added.] Thus, the existence of the wick is not only *material,* but essential, to the People's case, at least as to this charge.

[5]Here, as in *People v. Roblas, supra,* the procedural posture of the case is different from that presented in the latest Colorado and federal cases on this subject, in that the appellee's discovery motion was made prior to trial, and the testimony was ordered suppressed prior to trial. Therefore the guidelines established in those cases are not directly applicable. *See United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *People v. Harmes,* 38 Colo. App. 378, 560 P.2d 470 (1976).

indeed a cloth wick,[6] and defense counsel will have ample opportunity to attack that opinion at trial. Clearly, in this particular case, the People's case is weakened at least as much as the appellee's by the unavailability of this material evidence.

■ Moreover, again as in *Roblas,* there is no reason to suspect that the People knowingly or purposely suppressed or destroyed the evidence. In fact, the trial court specifically found that the failure to preserve the evidence resulted from the investigator's good faith belief that it *could not* be preserved. Moreover, the investigator testified that he still maintained that belief at the time of the suppression hearing. While hindsight may enable courts and counsel to imagine ideal investigatory techniques to fit any particular situation, investigators at the scene of a crime are not so blessed. "Not every blunder by investigators should result in the exclusion of relevant, competent, important evidence." *United States v. Sewar,* 468 F.2d 236, 237 (9th Cir. 1972). This is especially true where, as here, the investigator was confronted with evidence not easily susceptible of preservation, and proceeded according to his best judgment and standard fire department procedure.

■ Thus, since the investigator who observed the physical evidence made a good faith attempt to preserve it, and is available for examination regarding the nature of what he observed, the prosecution's inability to produce the wick remnant does not rise to constitutional dimensions in this particular case. *People v. Norwood,* 37 Colo. App. 157, 547 P.2d 273 (1975). *See also, United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969); *United States v. Sewar, supra; United States v. Augello,* 451 F.2d 1167 (2d Cir. 1971); *People v. Eddington,* 53 Mich. App. 200, 218 N.W.2d 831 (1974). Therefore, testimony relating to the alleged wick should not have been suppressed.

Accordingly, the trial court's suppression order is reversed and the cause is remanded for further proceedings consistent with this opinion.

---

[6]For example, in attempting to describe the appearance of the material, and the basis of his opinion that it was the remnants of a cloth wick, Investigator Seary stated:
"Not in pieces, what it — what it constitutes is a — how can I explain this? The outward outline appearance is there in some substances, but — well — I don't know how I would say it."